United States District Court

Eastern District of Louisiana

Sao Paulo State

v.                                          CIVIL ACTION NO. 2:00-cv-00922 S (4)

Amer Tobacco Co


The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

(1) A list of all parties still remaining in this action;

(2) Copies of all pleadings, including answers, filed by those parties in state court; and

(3) Copies of the return on service of process on those parties filed in state court.

New Orleans, Louisiana, March 24, 2000.

By Direction of the Court

LORETTA G. WHYTE, CLERK



FILED
U.S. DISTRICT COURT

2000 MAR 24  P 12: 02

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF SÃO PAULO OF THE FEDERATIVE REPUBLIC OF BRAZIL<br><br>vs.<br><br>THE AMERICAN TOBACCO COMPANY, INC.; AMERICAN BRANDS, INC.; FORTUNE BRANDS, INC.; R.J. REYNOLDS TOBACCO COMPANY; RJR NABISCO, INC.; BROWN & WILLIAMSON TOBACCO CORPORATION; BATUS, INC.; BATUS HOLDINGS, INC.; B.A.T. INDUSTRIES; PHILIP MORRIS INCORPORATED; PHILIP MORRIS COMPANIES INC.; LORILLARD TOBACCO COMPANY; LORILLARD, INC.; LOEWS CORPORATION; UNITED STATES TOBACCO COMPANY; UST INC.; LIGGETT GROUP INC.; THE TOBACCO INSTITUTE, INC.; QUAGLINO TOBACCO AND CANDY COMPANY, INC.; and J & R VENDING SERVICE, INC. | CIVIL ACTION<br>NO. 00-0922<br><br>Section: "____"<br><br>Magistrate: SECT. S MAG. 4 |

* * * * * * * * * * * * * * *

## NOTICE OF REMOVAL

TO:  THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
     COURT FOR THE EASTERN DISTRICT OF LOUISIANA

Defendants, Philip Morris Incorporated; Philip Morris Companies Inc.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company),

150.00
___ Process
_X_ Dktd
___ CtRmDep
___ Doc.No. _7_

Fortune Brands, Inc. (formerly known as American Brands, Inc.), BATUS, Inc.; BATUS Holdings Inc.; Lorillard Tobacco Company; and The Tobacco Institute, Inc.; ("Defendants")[1] state:

1.     Defendants desire to exercise their rights under the provisions of Title 28 U.S.C. § 1441, et seq., to remove this action from the Civil District Court, Parish of Orleans, Louisiana (Docket No. 2000-2058), in which said action is now pending under the above-captioned title.

2.     Plaintiff filed its Petition for Damages (the "Petition" or the "Complaint") in the Civil District Court for the Parish of Orleans on February 9, 2000 under Docket No. 2000-2058. The United States District Court for the Eastern District of Louisiana is the district embracing the place where this action is pending.

3.     No defendant received service of process before February 28, 2000. On or about February 28, 2000, defendants Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company) (incorrectly named and served as American Tobacco Company, Inc.), Lorillard Tobacco Company, Fortune Brands, Inc. (formerly known and incorrectly named and served herein as American Brands, Inc.) and J & R Vending Service, Inc. received service of process of plaintiff's Petition. On or about February 29, 2000, defendants Brown & Williamson Tobacco Corporation (individually and as successor

---

[1]     Each defendant joining herein has decided to join in this single Notice of Removal in order to avoid a multiplicity of notices of removal. Certain defendants are represented by separate counsel and reserve the right to assert independent interests as to any issue or matter, including with respect to any issues or matters related to the above-captioned action. By joining in this single notice of removal, no defendant authorizes any other party to act on its behalf as to any matter or issue relating to the above-captioned action. Defendants reserve all rights, including defenses and objections as to venue, personal jurisdiction and/or subject matter jurisdiction, capacity to be sued, and service, and filing of this notice of removal is subject to, and without waiver of, any such defenses and objections.

by merger to The American Tobacco Company), BATUS, Inc. and BATUS Holdings Inc. received service of process of plaintiff's Petition. On or about March 2, 2000, defendants Philip Morris Incorporated, Fortune Brands, Inc. (formerly known as American Brands, Inc.) and Liggett Group Inc. received service of process of plaintiff's Petition. No other defendant has been served with process. Defendants hereby reserve any and all rights to assert as defenses to Plaintiff's Petition for Damages the insufficiency of process or insufficiency of service of process. This Notice of Removal is filed within thirty (30) days of the date of the first service of the Petition. (A copy of the Complaint, as well as copies of all process, pleadings and orders filed to date in the Civil District Court, is attached to this Notice as Exhibit A.)

4. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal has been filed with the Civil District Court for the Parish of Orleans.

5. This is an action over which the federal district courts have original jurisdiction pursuant to 28 U.S.C. § 1331, which sets forth the federal question jurisdiction of such courts. Alternatively and additionally, 28 U.S.C. § 1332(a)(4) provides the federal courts with jurisdiction over this case.

## II. FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the Complaint asserts causes of action arising under the federal common law of foreign relations.

7. The federal common law of foreign relations has been repeatedly recognized as a basis for federal removal jurisdiction notwithstanding that claims purport to be pleaded under state law. See, e.g., Torres v. Southern Peru Copper Corp., 113 F.3d 540, 543 (5th Cir. 1997); Republic of the Philippines v. Marcos, 806

F.2d 344, 352 (2d Cir. 1986). This well-established principle of federal jurisdiction stems from the Supreme Court's recognition that the Constitution "reflect[s] a <u>concern for uniformity</u> in this country's dealings with foreign nations and indicate[s] a desire to give <u>matters of international significance to the jurisdiction of federal institutions</u>." <u>Banco Nacional de Cuba</u> v. <u>Sabbatino</u>, 376 U.S. 398, 427 n.25 (1964) (emphasis added).

8.  The Fifth Circuit has set forth the governing standard for determining when state-law claims implicate our nation's foreign relations, and for distinguishing those claims from those that do not give rise to federal question jurisdiction. It held in <u>Torres</u> that claims involving the "vital economic [and] sovereign interests" of a foreign government "raise[] substantial questions of federal common law by implicating important foreign policy concerns" and thus support federal question jurisdiction. <u>Torres</u>, 113 F.3d at 543; <u>see also</u> <u>Pacheco de Perez</u> v. <u>AT&T Co.</u>, 139 F.3d 1368, 1377 (11th Cir. 1998) ("Where a state law action has as a substantial element an issue involving foreign relations or foreign policy matters, federal jurisdiction is present. The cases addressing this area of federal common law generally involve disputes in which a foreign government, or its instrumentality, is a named party to the lawsuit, or where the actions of a foreign government are a direct focus of the litigation.") (citation omitted).

9.  The Complaint herein plainly demonstrates that this lawsuit as alleged implicates the vital economic and sovereign interests of the State of São Paulo. Among other things, the Complaint alleges that "for decades" defendants conspired to defraud the State through "wrongful suppression, active concealment and/or misrepresentation" of the health effects of smoking. (Pet. ¶ 94.) São Paulo claims that this conspiracy "caused Plaintiff to fail to take, or to delay taking,

prompt and adequate steps to address [such] health effects." (Pet. ¶ 83; see also ¶¶ 8, 108.) As an alleged result, São Paulo claims that "Defendants' conduct has caused an incalculable loss of life, disease, disability, pain, suffering [and] illness" to its citizens (¶ 5), and that São Paulo itself has paid and will pay "staggering amounts of money" for the medical care of such citizens. (¶ 84.) São Paulo seeks "hundreds of millions of dollars" (¶ 100) to compensate for this alleged injury to its "national patrimony." (¶ 155.)

  10. Not only does this action implicate São Paulo's vital economic and sovereign interests, it also has important foreign policy implications of concern to this nation: a foreign government seeks here to impose liability on an entire United States industry based on the alleged manipulation of the policy making of governments worldwide. See, e.g., ¶ 8.

  11. Moreover, the regulation of foreign commerce is a matter entrusted by the Constitution to the federal government. It would be inappropriate for a state to interfere in the manners contemplated by this lawsuit. Indeed, within the area of foreign commerce, disputes between foreign governments and United States companies have been a matter of overriding federal concern.

  12. In addition, the question whether a political subdivision within the Republic of Brazil can properly sue to recover Brazilian health care costs -- and São Paulo is one of four such political subdivisions to have sued the American tobacco industry to date -- is a question that must be decided uniformly pursuant to federal law.

  13. São Paulo is the eleventh foreign government to have filed a lawsuit against the tobacco industry in the United States. The other foreign governments to bring such suits were (in the order filed) Guatemala, Panama, Nicaragua,

Bolivia, Thailand, Venezuela, the Brazilian State of Rio de Janeiro, the Brazilian State of Goias, Ukraine, and Ecuador. (Since the filing of this São Paulo action, suits have been filed by Ontario and the Brazilian State of Espirito Santo.) Five of these cases were filed by the foreign government plaintiffs in federal court; the others were filed in state courts and have been (or, in the case of the recently filed Ecuador and Espirito Santo lawsuits, will be) removed by the defendants to federal courts.

14. In February 1999, in light of the pendency then of six of these actions in multiple judicial districts, defendants filed a motion before the Judicial Panel on Multidistrict Litigation seeking to have those governmental health care costs litigations consolidated for pretrial proceedings in the District of Columbia federal court. Plaintiffs opposed that motion. On June 10, 1999, the MDL Panel granted defendants' MDL Motion. In granting defendants' Motion, the MDL Panel rejected the argument of plaintiffs' counsel (which included the same counsel representing São Paulo here) that the MDL Motion should be denied because motions to remand were pending in certain of the cases. To the contrary, the MDL Panel ruled that centralization of the cases in the District of Columbia was necessary in order "to prevent inconsistent pretrial rulings," which it considered to be "a matter of heightened importance, from the standpoint of the <u>United States' conduct of foreign relations, in litigations involving foreign sovereigns as plaintiffs</u>." <u>In re Tobacco/Governmental Health Care Costs Litigation</u>, Docket No. 1279, slip op. at 1 (J.P.M.L. June 10, 1999) (attached hereto as Exhibit B) (emphasis added).

15. In addition, also before the MDL Panel directed consolidation, the Southern District of Texas (Kent, J.) on its own initiative ordered transfer of the action filed by Bolivia to the District of Columbia federal court pursuant to 28

U.S.C. § 1404. Republic of Bolivia v. Philip Morris Cos., 39 F. Supp. 2d 1008 (S.D. Tex. 1999). The Court held that transfer to the District of Columbia was appropriate because of (among other things) the "complex and sophisticated issues of international law and foreign relations presented by [Bolivia's] case," and the District of Columbia Court's "high level of expertise in international matters." Id. at 1009. This lawsuit is substantially similar to the Bolivia case ordered transferred to the District of Columbia as described above, and thus involves the same "complex and sophisticated issues of international law and foreign relations."

16.  In accordance with the rules of the MDL Panel, defendants are notifying the Panel of the pendency of this action in this Court, and are designating this case as a "tag-along" action to be consolidated with the other similar actions now pending in the District of Columbia.

17.  The federal courts presiding over Nicaragua's action (D.P.R., Acosta, J.), Thailand's action (S.D. Tex., Hoyt, J.), Venezuela's action (S.D. Fla., Ungaro-Benages, J.), and the Goias action (S.D. Fla., Hoeveler, J.) stayed all proceedings in those actions pending transfer by the MDL Panel. For the reasons set forth in defendants' motion for stay and memorandum in support thereof, filed contemporaneously herewith, this Court should likewise stay proceedings in this case pending transfer of this action by the MDL Panel.[2]

18.  In addition, similar issues are now pending on appeal before the Fifth Circuit. In particular, the Fifth Circuit has now scheduled oral argument for the week of May 1, 2000 in defendants' appeal from this Court's decisions in the

---

[2] As a result of the MDL Panel's June 10, 1999 Order, motions to remand raising similar issues of federal jurisdiction are now pending before Judge Friedman of the District of Columbia in the Bolivia, Venezuela, and Goias cases. The D.C. Court has heard several hours of oral argument, and decisions on these remand motions are expected shortly.

Panama action (including this Court's denial of recusal, denial of stay and grant of remand). Given that the Fifth Circuit will shortly be considering these controlling issues in connection with the Panama case, it makes even greater sense for this Court to stay proceedings.

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The action is thus removable "without regard to the citizenship or residence of the parties."

### III. SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332(a)(4)

20. Alternatively, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(4). That section provides for jurisdiction over actions between a foreign state as plaintiff and citizens of different states, provided the amount in controversy exceeds $75,000.

21. The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interests and costs. (Pet. ¶ 109.)

22. The named plaintiff, the State of São Paulo, is a political subdivision of a foreign state (the Republic of Brazil) and therefore meets the definition of a "foreign state" provided by 28 U.S.C. § 1603(a).

23. At the time of commencement of this action, all defendants were, and are now, corporations organized under the laws of States other than Louisiana, with their principal places of business located in States other than Louisiana, with the exception of B.A.T Industries p.l.c. ("B.A.T Industries"); Quaglino Tobacco and Candy Company, Inc.; and J&R Vending Service, Inc. The involvement of those

parties does not deprive this Court of jurisdiction under 28 U.S.C. § 1332(a)(4), for the reasons set forth below.[3]

## **B.A.T Industries**

24.     As noted above, this is an action between a foreign state and a large group of citizens of different domestic states. São Paulo's decision to name as a defendant a corporation organized under the laws of, and headquartered in, the United Kingdom -- to wit, B.A.T Industries -- does not deprive the federal court of jurisdiction over this case. Properly construed, 28 U.S.C. § 1332(a)(4) does not deprive the federal court of original jurisdiction simply because a foreign state plaintiff has chosen to join foreign defendants in addition to citizens of domestic states.[4] Because original jurisdiction exists, removal jurisdiction likewise exists. See 28 U.S.C. § 1441(a).

---

[3]     Defendant BATUS Holdings Inc. is incorporated in Delaware and has its principal place of business in the United Kingdom. For the purpose of removal jurisdiction, BATUS Holdings Inc. is "solely" a citizen of the State of Delaware. See Torres, 113 F.3d at 543-44 (corporation incorporated in the United States with its principal place of business abroad is considered a citizen of the state of incorporation).

[4]     Sections 1330 and 1332(a)(4) of Title 28 were enacted in 1976 as part of the Foreign Sovereign Immunities Act ("FSIA"). The legislative purpose of FSIA was to "facilitate federal jurisdiction over actions involving foreign states and their instrumentalities in order to promote uniformity of treatment." 14A Charles A. Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 3662. The act was passed "in response to unique policy considerations touching on international relations of the United States, considerations not apropos of the federal diversity statute." In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig., 15 F.3d 1230, 1239 (3d Cir. 1993). In light of those special concerns -- concerns not present in diversity cases between citizens of different domestic States, nor even in alienage diversity cases that do not involve foreign states -- "the policy of 'jealous restriction' which has characterized application of the diversity statute is not operative in the FSIA context." Id.

It is axiomatic that statutes should not be read to produce absurd results. See, e.g., Church of the Holy Trinity v. United States, 143 U.S. 457, 459 (1892). Given that where citizens of one state are suing citizens of another, the addition of foreign defendants would not defeat diversity jurisdiction, see 28 U.S.C. § 1332(a)(3), it would be absurd to read subsection (a)(4) -- a statutory provision that was intended to open the door to federal court for foreign states suing in the United States -- to conclude that a different, more restrictive result should occur where the plaintiff is a foreign state.

25.     In any event, even if the presence of a U.K. defendant would deprive this court of jurisdiction under 28 U.S.C. § 1332(a)(4), and it does not, defendants respectfully submit that B.A.T Industries is fraudulently joined. The State of São Paulo has no possibility of establishing a cause of action against B.A.T Industries, and Louisiana is a manifestly unreasonable forum of the State of São Paulo to bring this suit, making the exercise of personal jurisdiction over B.A.T Industries (and certain other parties named as defendants) in this case constitutionally impermissible. See, e.g., Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).[5]

## The Distributor Defendants

26.     Defendants Quaglino Tobacco and Candy Company, Inc. and J & R Vending Service, Inc. (together, the "Distributor Defendants") have their principal places of business in Louisiana. Nevertheless, this should not operate to defeat removal on diversity grounds for two reasons: (1) because diversity jurisdiction is founded on 28 U.S.C. § 1332(a)(4), this case falls within the first sentence, not the second sentence, of 28 U.S.C. § 1441(b), such that the naming of in-state defendants is irrelevant; and (2) the Distributor Defendants have in any event been fraudulently joined.

27.     First, an action between a foreign state and citizens of multiple States of the United States -- such as the one at bar -- "aris[es] under the . . . laws of the United States" and as such falls within the first, rather than the second, sentence of 28 U.S.C. § 1441(b). The Diversity Clause of the Constitution, with respect to suits by or against foreign states, is limited to suits between a foreign state and citizens

---

[5]     In addition, B.A.T Industries has not been served with process.

of a state. See U.S. Const. art. III § 2. Section 1332(a)(4) of Title 28, however, provides for jurisdiction over a suit by a foreign state against "citizens of a State or of different States." (Emphasis added).

28.  The "different States" provision of 28 U.S.C. § 1332(a)(4) thus does not derive from the constitutional grant of diversity jurisdiction, but rather from Congress' authority to provide access to the federal courts in matters "arising under" federal law -- here, for example, Congress' power over such matters as foreign relations and foreign commerce. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 491-92 (1983) (action by foreign citizens against a foreign state under 28 U.S.C. § 1330 not sustainable under Diversity Clause but rather proper as "arising under" federal law). Because this action "arises under" federal law, it falls within the first sentence of 28 U.S.C. § 1441(b) and the joinder of the Distributor Defendants is irrelevant.

29.  Second, the Distributor Defendants have been fraudulently joined. They do not manufacture tobacco products. They sell tobacco products in their original, sealed containers. The Distributor Defendants do not have any greater knowledge of the composition or properties of tobacco products than does the consuming public. In fact, São Paulo has not made a single allegation against the Distributor Defendants that would support a cause of action against them. Plaintiff, a foreign state, does not allege a single contact, transaction or other relationship between it and either of the Louisiana-based Distributor Defendants. It would be patently ludicrous for Plaintiff to contend that these local distributors are part of some global conspiracy directed at the State of São Paulo. There is, therefore, no possibility that Plaintiff will be able to establish liability against the Distributor Defendants under the allegations contained in Plaintiff's Petition.

30.  Confronting similar instances where plaintiffs suing the tobacco industry also joined in-state tobacco distributors as defendants, the federal courts in Louisiana have repeatedly declared such joinder fraudulent and have repeatedly denied plaintiffs' motions to remand. See Knowles v. The American Tobacco Company, Inc., No. 97-2365 (E.D. La. July 8, 1998); Badon v. R.J.R. Nabisco, Inc., No. CV98-0215 (W.D. La. Apr. 17, 1998); Lonkowski v. R.J. Reynolds Tobacco Co., No. 96-1192, 1996 WL 888182 at *4 - *10 (W.D. La. Dec. 10, 1996); Vickery v. R.J. Reynolds Tobacco Co., No. 96-2612 (W.D. La. Apr. 3, 1997); Morgan v. United States Tobacco Co., Inc., No. 97-0280 (W.D. La. Apr. 17, 1997).

31.  The fraudulent joinder of the Distributor Defendants in this case is even more blatant than the fraudulent joinder of the local distributors in the above-cited cases. Those cases involved individual Louisiana plaintiffs alleging claims against Louisiana distributors who distributed products within the State in which the alleged damage was incurred. By contrast, in this case, there is no allegation that the Distributor Defendants did any business in São Paulo or had any other conceivable connection to São Paulo. If removal was deemed proper in the above-cited cases, it is without question proper in this case. Thus, the citizenship of the distributor defendants herein should be disregarded for purposes of this Court's removal jurisdiction under 28 U.S.C. § 1441(b).[6]

---

[6]  In Republic of Panama v. American Tobacco Co., 1999 WL 350030 (E.D. La. May 28, 1999), the court rejected defendants' contentions of fraudulent joinder on the theory that plaintiff might prevail against the Distributor Defendants as subrogee to the claims of injured Panamanian smokers. However, the Court ignored the fact that Panama's complaint explicitly disavowed subrogation claims. São Paulo's Petition, which is almost exactly identical to Panama's, likewise disavows subrogation. (Pet. ¶ 155.)

In the Badon case in which Judge Trimble held that distributor defendants were fraudulently joined and thus diversity jurisdiction existed, he recognized that a few courts had reached the opposition conclusion. See, e.g., Scott v. American Tobacco Co., 959 F. Supp. 340 (E.D. La. 1996). Accordingly, Judge Trimble certified his Badon opinion for interlocutory appeal pursuant

### IV. CONSENT OF DEFENDANTS TO REMOVAL

32. All served defendants in this case have consented to the removal of this case. See Exhibit C (consents to removal). B.A.T Industries intends to file its consent to removal upon being served with process. United States Tobacco Co. and UST, Inc. have been voluntarily dismissed by Plaintiff and are no longer parties to this lawsuit.

### V. RESERVATION OF RIGHT TO AMEND

33. Defendants respectfully reserve the right to amend or supplement this Notice of Removal.

### VI. JURY DEMAND

34. Defendants request a trial by jury.

**WHEREFORE**, the undersigned defendants hereby remove the action now pending against them in the Orleans Parish Civil District Court (Docket Number 2000-2058) to the United States District Court for the Eastern District of Louisiana.

---

to 28 U.S.C § 1292(b). The Badon appeal has been fully briefed, the Fifth Circuit heard oral argument on September 9, 1999, and a decision resolving these issues is expected shortly. The pendency of these appellate proceedings before the Fifth Circuit on this issue further supports the entry of a stay of proceedings in this case.

Respectfully submitted,

**ADAMS AND REESE, L.L.P.**

*/s/ Jeffrey E. Richardson*

**CHARLES F. GAY, JR., T.A., #5990**
**RONALD J. SHOLES**, #14436
**DEBORAH B. ROUEN**, #2084
**MARTIN A. STERN**, #17154
**JEFFREY E. RICHARDSON**, #23273
4500 One Shell Square
New Orleans, LA 70139
(504) 581-3234

*Counsel for Defendants Philip Morris Incorporated and Philip Morris Companies Inc.*


**STONE, PIGMAN, WALTHER, WITTMANN & HUTCHINSON, L.L.P.**

*/s/ Phil Wittmann*

**PHILLIP A. WITTMANN**, #13625
**STEPHEN H. KUPPERMAN, T.A.**, #7890
**DOROTHY H. WIMBERLY**, #18509
546 Carondelet Street
New Orleans, LA 70130
(504) 581-3200

*Counsel for Defendants R. J. Reynolds Tobacco Company*

**CHAFFE, McCALL, PHILLIPS, TOLER & SARPY, L.L.P.**

*[signature]*

**CARMELITE M. BERTAUT, T.A.** #3054
**WILLIAM F. GRACE, JR.,** #6199
**PETER J. ROTOLO III,** #21848
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
(504) 585-7000

*Counsel for Defendants Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company), Fortune Brands, Inc. (formerly known as American Brands, Inc.), BATUS, Inc. and BATUS Holdings Inc.*


**GORDON, ARATA, McCOLLAM, DUPLANTIS & EAGAN, L.L.P.**

*[signature]*

**STEVEN W. COPLEY, T.A.,** #16869
**ERNEST E. SVENSON,** #17164
201 St. Charles Avenue, Suite 4000
New Orleans, LA 70170
(504) 582-1111

*Counsel for Defendant Lorillard Tobacco Company*

LEMLE & KELLEHER, L.L.P.

_____
ALAN H. GOODMAN, T.A., #6131
THOMAS M. BENJAMIN, #18562
601 Poydras Street, Suite 2100
New Orleans, LA 70130-2100
(504) 586-1241

*Counsel for Defendant The Tobacco Institute, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been sent to all counsel by hand, by telecopier, and/or by placing same in the U.S. Mail, postage pre-paid, this __24__ day of March, 2000.

_____
JEFFREY E. RICHARDSON